IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 05-cv-01233-LTB-MJW

GREENBERG & ASSOCIATES. INC., d/b/a Agile Advisors, Inc. a Delaware corporation,
TACTICAL ALLOCATION SERVICES, LLC, d/b/a Agile Allocation Services, LLC, a
Delaware limited liability company,
AGILE GROUP, LLC, a Delaware limited liability company,
GREENBERG & ASSOCIATES SECURITIES, INC., d/b/a Agile Group, a Delaware
corporation, and
NEAL R. GREENBERG, a Colorado resident,

    Plaintiffs,

v.

LEONARD COHEN, a Canadian citizen residing in California,
ROBERT KORY, a United States citizen residing in California,
KELLEY LYNCH, a United States citizen residing in California, and
JOHN DOE, Numbers 1-25,

    Defendants.
_____

ORDER
_____

    The defendant Robert Kory moves for dismissal of all claims against him on the alternate grounds that I have no personal jurisdiction over him, Fed. R. Civ. P. 12(b)(2), and that the plaintiffs have failed to state a claim against him, Fed. R. Civ. P. 12(b)(6). The motion is adequately briefed and oral arguments would not materially aid its resolution. For the reasons stated below, I find and conclude that I have no personal jurisdiction over Mr. Kory and I GRANT the motion pursuant to Rule 12(b)(2).

    Because Mr. Kory has contested the Court's jurisdiction, the plaintiffs have "the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id*.

In resolving factual questions,

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well-pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Id* (citations omitted).

## I. Allegations

The allegations of the Amended Complaint are substantially the following. In 1997, the defendant Leonard Cohen, a resident of California, retained the plaintiffs, directed by the plaintiff Neal Greenberg and headquartered in Boulder, Colorado, to create for him charitable trusts and to manage the assets placed into those trusts. (Throughout the Amended Complaint and their briefs, the plaintiffs refer to themselves individually and in the aggregate as "Greenberg." They do not reveal the nature of their relationships to each other. I have attempted to be as precise as the pleadings and the record will allow.) Mr. Cohen allegedly drew extravagant sums from the trusts, depleting the principal amounts and impeding the plaintiffs' efforts successfully to invest the funds in profitable ventures. The defendant Kelley Lynch, Mr. Cohen's manager, oversaw and had power of attorney over, all of Mr. Cohen's financial dealings. Mr. Greenberg allegedly repeatedly warned Ms. Lynch and Mr. Cohen that Mr. Cohen was spending too much and that, absent a change of habit, he would become destitute.

In October, 2004, Mr. Cohen and Ms. Lynch allegedly parted ways and began to issue competing directives to the plaintiffs. They each blamed the other for Mr. Cohen's financial distress. Mr. Cohen claimed that Ms. Lynch had deprived him of substantial sums of money. Thereafter, Mr. Cohen and Mr. Kory, Mr. Cohen's personal attorney and a California resident, allegedly conspired to extort the lost sums from the plaintiffs by tarnishing the plaintiffs' reputation, asserting spurious claims, and coercing a settlement from the plaintiffs' insurance carrier. This they intended to accomplish by using Mr. Cohen's fame as a prominent recording artist to publish defamatory statements about the plaintiffs to the press. They tried to compel Ms. Lynch to participate in their project by, among other tactics, having her arrested on false pretenses and initiating proceedings to deprive her of her children. The Amended Complaint does not indicate that this purported thuggery was effective.

Mr. Kory sent an allegedly defamatory demand letter to Mr. Greenberg's attorney, wrongly accusing the plaintiffs of fraud and various breaches of fiduciary duty. After the plaintiffs filed this lawsuit, Messrs. Cohen and Kory allegedly published defamatory statements on Mr. Cohen's web site, blaming the plaintiffs for the lost monies, asserting that the plaintiffs had wrongfully permitted Ms. Lynch to withdraw unauthorized sums, and asserting that the plaintiffs had provided Mr. Cohen with fraudulent accounting records. Mr. Cohen and Ms. Lynch now dispute entitlement to the funds remaining in the trusts. Each seeks immediate acquisition of the funds.

Mr. Kory allegedly submitted to the jurisdiction of this Court by his purposeful and repeated written and telephonic communications with the plaintiffs and his direction of Mr. Greenberg's activities, performed in Colorado. Additionally, Mr. Kory allegedly reserved a

conference room at the Denver International Airport and scheduled a meeting, which he, Mr. Greenberg, Mr. Cohen, and Mr. Greenberg's counsel were to attend. Messrs. Kory and Cohen allegedly failed to appear for the meeting, which Mr. Greenberg attended.

## II.  The record

### A.  Kory affidavit

Mr. Kory has provided two affidavits replete with refutations of the plaintiffs' jurisdictional allegations. He is licensed to practice law in California, where he resides and has his law practice. He last traveled to Colorado in 1985 or 1986 for a ski vacation. He has no business or property interests in Colorado.

In the fall of 2004, Mr. Cohen retained Mr. Kory to investigate suspected losses from an entity denominated Traditional Holdings, LLC ("Traditional"), which the plaintiff, Tactical Allocation Services, LLC ("Tactical") managed for Mr. Cohen under Mr. Greenberg's direction. In the ensuing weeks, Mr. Kory contacted Tactical's Boulder, Colorado office on two or three occasions. Tactical responded by sending information about Mr. Cohen's accounts to Mr. Kory in California. Thereafter, Mr. Kory communicated predominantly with Tactical's legal counsel, Sherab Posel, whom Mr. Kory believed to be resident in New York. Though he engaged in at least one email exchange with representatives of Tactical located in Boulder, Mr. Kory communicated Mr. Cohen's asserted legal claims against Tactical and related requests for information to Mr. Posel, who responded on letterhead imprinted with New York addresses.

In April, 2005, Mr. Kory and Mr. Posel scheduled a mediation for June 5, 2005, which was to occur in Colorado. Mr. Kory reserved a conference room at a hotel near the Denver airport in anticipation of that meeting. After Mr. Posel disputed the veracity of Mr. Cohen's

claims and threatened litigation, Mr. Kory cancelled the room reservation in Colorado and remained in California.

**B.      Barnett affidavit**

Timothy Barnett, Tactical's Vice President who works in Boulder, has produced correspondence – emails and letters – between Mr. Kory and representatives of the plaintiffs in Colorado and New York.  Numerous emails and letters between Mr. Kory and Mr. Barnett throughout the period beginning in November, 2004 and ending in June, 2005 addressed Mr. Kory's requests for information about the accounts that Tactical managed for Mr. Cohen and Tactical's efforts to comply with those requests.  Contrary to Mr. Kory's assertion, these communications number in the dozens.  Many of the communications indicate that copies were sent to Mr. Greenberg and Mr. Posel, among others.  Emails exchanged on December 15 and 16, 2004 detailed plans for a conference call involving Messrs. Kory, Barnett, and Posel.  The three set up another conference call in March, 2005.  Other emails reference telephone calls between Mr. Kory and Mr. Barnett and calls and conversations between Mr. Kory and Mr. Posel.

In an April 10, 2005, twenty-seven page demand letter to Mr. Posel, Mr. Kory asserted claims against "the Agile Group, Neal Greenberg and his partners" on Mr. Cohen's behalf.  Mr. Kory made repeated references to the "several telephone conversations and e-mails regarding" the claims that he and Mr. Posel had previously exchanged.  He invited a further response from Mr. Posel.  Thereafter, Mr. Kory and Mr. Barnett exchanged emails only discussing the scheduling of a mediation meeting for June 5, 2005.  Mr. Posel and Mr. Kory continued to communicate in writing about Mr. Cohen's allegations.  On June 4, 2005, Mr. Kory wrote to Mr. Posel by email cancelling the mediation, but making no reference to the lawsuit that the plaintiffs had purportedly

5

threatened. In a June 9, 2005 email, Mr. Kory expressed surprise at the contents of a draft complaint that Mr. Posel had sent him the day before.

By letter on June 2, 2005, Mr. Kory sent to Mr. Barnett two checks for deposit in Mr. Cohen's accounts. On June 7, Mr. Barnett responded in writing, noting that Mr. Cohen had terminated his relationship with the plaintiffs.

### III.  Discussion

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). Because, as set forth below, I conclude that the Colorado long-arm statute does not reach Mr. Kory, I need not consider the constitutional question.

The plaintiffs argue that Mr. Kory has submitted to jurisdiction in Colorado by the "commission of a tortious act within this state." Colo. Rev. Stat. § 13-1-124(1)(b). Colorado courts have held that the tort provision of the long-arm statute may be satisfied either 1) when tortious conduct occurs in Colorado, or 2) when tortious conduct initiated in another state causes injury in Colorado. *Wenz*, 55 F.3d at 1507; *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235-236 (Colo. 1992).

The plaintiffs first argue that Mr. Kory committed tortious conduct in Colorado. Directing into Colorado communications by which a tort is committed constitutes conduct sufficient to satisfy the statute if the tort is completed by the plaintiff's receipt in Colorado of the communications. *Id.* at 236; *Broadview Financial, Inc. v. Entech Management Services Corp.*,

859 F. Supp. 444, 448 (D. Colo. 1994).  However, merely communicating with a person resident in Colorado is, in itself, insufficient to bring a defendant within the reach of the Colorado statute. *Archangel Diamond Corp. v. Lukoil*, – P.3d – , 2005 WL 3097588 (Colo. 2005).

Mr. Kory's several communications with Mr. Barnett concerned Mr. Kory's attempts to elicit information from Mr. Barnett that would prove useful to Mr. Cohen.  Though the plaintiffs feel that Mr. Kory solicited their cooperation in bad faith – Mr. Kory used much of the information the plaintiffs provided to construct claims against them, even as he repeatedly commended them for their diligence – the gravamen of their claims against Mr. Kory is that he conspired to defame them and to extort money from them by asserting frivolous claims.  Mr. Kory directed to Mr. Posel in New York, and not to Mr. Barnett in Colorado, the communications by which he allegedly accomplished those torts.  The plaintiffs have not argued – nor does it appear from the record – that the exchange of information and documents between Mr. Kory and Mr. Barnett was tortious.  Nor could the plaintiffs premise liability on Mr. Kory's later-reneged reservation of a conference room in Colorado.

I am left to determine whether the plaintiffs have suffered an injury in Colorado as a result of Mr. Kory's allegedly tortious acts.  *Wenz*, 55 F.3d at 1507.  Tortious-activity jurisdiction obtains under the statute when "the injury itself" occurs in Colorado.  *McAvoy v. District Court*, 757 P.2d 633, 635 (Colo. 1988).

> Further, the injury in the forum state must be direct, not consequential or remote, and loss of profits in the state of plaintiff's domicile is insufficient to sustain long-arm jurisdiction over a nonresident defendant.  Hence, when both the tortious conduct and the injury occur in another state, the fact that plaintiff resides in Colorado and experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court.

*Amax Potash Corp. v. Trans-Resources, Inc.*, 817 P.2d 598, 600 (Colo. Ct. App. 1991) (citations

omitted).

The plaintiffs argue that Mr. Kory directed the injurious consequences of his wrongful activity toward Colorado because they, who have an office here, were the intended recipients of the harm. They cite *D & D Fuller CATV Const., Inc. v. Pace*, 780 P.2d 520 (Colo. 1989) for the proposition that Mr. Kory could, therefore, have reasonably anticipated being haled into court in Colorado. However, they have not addressed the prior question where the injury occurred. Nothing in the record, Mr. Barnett's correspondence from Colorado included, appears to demonstrate that the plaintiffs suffered an injury in Colorado. Indeed, the only business the plaintiffs are alleged to have lost was transacted with Mr. Cohen, who resides in California.

Accordingly, it is ORDERED that

1) Robert Kory's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) [13] is GRANTED; and

2) the plaintiffs' claims against Mr. Kory are dismissed.

Dated: December   5  , 2005, in Denver, Colorado.

                                                BY THE COURT:

                                                s/Lewis T. Babcock
                                                Lewis T. Babcock, Chief Judge