IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No.  05-cv-01233-LTB-MJW

GREENBERG & ASSOCIATES. INC., d/b/a Agile Advisors, Inc. a Delaware corporation,
TACTICAL ALLOCATION SERVICES, LLC, d/b/a Agile Allocation Services, LLC, a Delaware limited liability company,
AGILE GROUP, LLC, a Delaware limited liability company,
GREENBERG & ASSOCIATES SECURITIES, INC., d/b/a Agile Group, a Delaware corporation, and
NEAL R. GREENBERG, a Colorado resident,

    Plaintiffs,

v.

LEONARD COHEN, a Canadian citizen residing in California,
KELLEY LYNCH, a United States citizen residing in California, and
JOHN DOE, Numbers 1-25,

    Defendants.
_____

ORDER
_____

The defendant Leonard Cohen moves for an order compelling arbitration of the plaintiffs' claims against him.  The parties have provided briefs, exhibits, and oral arguments.  For the reasons stated below, I DENY the motion.

**I. Allegations**

The allegations of the Amended Complaint are substantially the following.  In 1997, Mr. Cohen, a resident of California, retained the plaintiffs, directed by the plaintiff Neal Greenberg and headquartered in Boulder, Colorado, to create for him charitable trusts and to manage the assets placed into those trusts.  Mr. Cohen allegedly drew extravagant sums from the trusts, depleting the principal amounts and impeding the plaintiffs' efforts successfully to invest the funds in

profitable ventures. The defendant Kelley Lynch, Mr. Cohen's manager, oversaw and had power of attorney over all of Mr. Cohen's financial dealings. Mr. Greenberg allegedly warned Ms. Lynch and Mr. Cohen on occasions that Mr. Cohen was spending too much and, absent a change of habit, would become destitute.

In October, 2004, Mr. Cohen and Ms. Lynch allegedly parted ways and began to issue competing directives to the plaintiffs. They each blamed the other for Mr. Cohen's financial distress. Mr. Cohen claimed that Ms. Lynch had deprived him of substantial sums of money. Thereafter, Mr. Cohen and his personal attorney, Robert Kory, allegedly conspired to extort the lost sums from the plaintiffs by tarnishing the plaintiffs' reputation, asserting spurious claims, and coercing a settlement from the plaintiffs' insurance carrier. This they intended to accomplish using Mr. Cohen's fame as a prominent recording artist to publish defamatory statements about the plaintiffs. They tried to compel Ms. Lynch to participate in their project by, among other tactics, having her arrested on false pretenses and initiating proceedings to deprive her of her children. The Amended Complaint does not indicate that this purported thuggery was effective.

Mr. Kory, acting on Mr. Cohen's behalf, sent an allegedly defamatory demand letter to Mr. Greenberg's attorney, wrongly accusing the plaintiffs of fraud and various breaches of fiduciary duty. After the plaintiffs filed this lawsuit, Messrs. Cohen and Kory allegedly published defamatory statements on Mr. Cohen's web site, blaming the plaintiffs for the lost monies, asserting that the plaintiffs had wrongfully permitted Ms. Lynch to withdraw unauthorized sums, and asserting that the plaintiffs had provided Mr. Cohen with fraudulent accounting records.

Mr. Cohen and Ms. Lynch now dispute entitlement to the funds remaining in the trusts. Each seeks immediate acquisition of the funds. The plaintiffs have filed an interpleader action

against both Mr. Cohen and Ms. Lynch and assert additional claims against Mr. Cohen for civil conspiracy, outrageous conduct (emotional distress), civil extortion, and defamation.

## II.  Evidentiary Materials

Mr. Cohen asks this Court to enforce an arbitration clause contained in a January, 1997 services agreement ("1997 Agreement") to which he and the plaintiff Tactical Allocation Services, LLC ("Tactical") were parties. That clause states,

> Any dispute or controversy rising out of or relating to this Agreement, any document or instrument delivered pursuant to, in connection with, or simultaneously with this Agreement or any breach of this Agreement or such documentation or instrument, or with respect to the relationship between TAS and Client shall be settled by final and binding arbitration to be held in Boulder, Colorado in accordance with the rules in effect of the NASD Arbitration Association.  Judgment may be entered on the arbitrator's decision in any court having jurisdiction, and the parties irrevocably consent to the jurisdiction of the Colorado courts for this purpose.

The plaintiffs respond that a series of February 26, 2002 agreements, signed by Ms. Lynch on Mr. Cohen's behalf, supersede the 1997 Agreement and control here. One of the 2002 agreements ("Tactical Agreement"), ostensibly between Mr. Cohen and Ms. Lynch as "CLIENT" and Tactical as "ADVISER," provides,

> This Agreement supersedes and replaces, in its entirety, all previous investment advisory agreement(s) between the parties.  To the extent not inconsistent with applicable law, this Agreement shall be governed by and construed in accordance with the laws of the State of Colorado.  In addition, to the extent not inconsistent with applicable law, the venue (i.e. location) for the resolution of any dispute or controversy between ADVISER and CLIENT shall be the County of Boulder, State of Colorado.

Tactical Agreement ¶ 20.  The arbitration clause of the Tactical Agreement provides,

> Subject to the conditions and exceptions noted below, and to the extent not inconsistent with applicable law, in the event of any dispute pertaining to ADVISER's services under this Agreement, both ADVISER and CLIENT agree to submit the dispute to arbitration in accordance with the auspices and rules of the American Arbitration Association ("AAA"), provided that the AAA accepts jurisdiction.  ADVISER and CLIENT understand that

3

>such arbitration shall be final and binding, and that by agreeing to arbitration, both ADVISER and CLIENT are waiving their respective rights to seek remedies in court, including the right to a jury trial. CLIENT acknowledges and agrees that in the specific event of non-payment of any portion of Adviser Compensation pursuant to paragraph 2 of this Agreement, ADVISER, in addition to the aforementioned arbitration remedy, shall be free to pursue all other legal remedies available to it under law, and shall be entitled to reimbursement of reasonable attorneys fees and other costs of collection.

Tactical Agreement ¶ 15.

Paragraph 2, referenced in the arbitration clause, sets forth the principles and formulae by which Tactical's compensation is to be determined and paid. "Adviser's services," described at length over several paragraphs, are summarized as responsibility "for the investment and reinvestment of those assets of the CLIENT designated by the CLIENT to be subject to the ADVISER'S management." Tactical Agreement ¶ 1(a). The Tactical Agreement contains numerous ancillary provisions, including various acknowledgments, promises, and liability waivers by the CLIENT; the ADVISER's promise to provide to the CLIENT periodic reports; and provisions for termination and assignment of the agreement and severability of its provisions.

A second February 26, 2002 agreement ("G&A Agreement") by and between Mr. Cohen and Ms. Lynch as "CLIENT" and the plaintiff Greenberg & Associates, Inc. ("G&A") as "PLANNER," requires G&A to "provide CLIENT with some or all of the following services: estate planning, tax planning, retirement planning, insurance advice, and investment advice." G&A Agreement ¶ 1. Like the Tactical Agreement, the G&A Agreement "supersedes and replaces, in its entirety, all previous financial planning agreement(s) between the parties, and is governed by Colorado law. G&A Agreement ¶ 7. Resolutions of all disputes is to occur in Boulder, Colorado.

The G&A Agreement contains an arbitration clause, which states,

4

> Subject to the conditions and exceptions noted below, and to the extent not inconsistent with applicable law, in the event of any dispute pertaining to PLANNER's services under this Agreement, both PLANNER and CLIENT agree to submit the dispute to arbitration in accordance with the auspices and rules of the American Arbitration Association ("AAA"), provided that the AAA accepts jurisdiction. PLANNER and CLIENT understand that such arbitration shall be final and binding, and that by agreeing to arbitration, both PLANNER and CLIENT are waiving their respective rights to seek remedies in court, including the right to a jury trial. CLIENT acknowledges that he/she/it has had a reasonable opportunity to review and consider this arbitration provision prior to the execution of this Agreement.

G&A Agreement ¶ 5. Like the Tactical Agreement, the G&A Agreement contains provisions other than those circumscribing the services G&A is to provide.

The Tactical Agreement and the G&A Agreement each contain separate signature lines for Ms. Lynch and Mr. Cohen. In each agreement, the signature line for Ms. Lynch contains a signature, apparently hers, and the line for Mr. Cohen is blank. By affidavit, Mr. Greenberg explains,

> Over the years, Mr. Cohen has routinely designated Kelley Lynch to represent his interests and convey his instructions with regard to his investment accounts managed by [Tactical]. In addition, we accepted Ms. Lynch's signature on Mr. Cohen's two new customer agreements in February 2002 (one for [Tactical] and one for G&A) because of this standing practice, and because we were then in possession of a broad and durable power of attorney Mr. Cohen previously had granted Ms. Lynch. Ms. Lynch was also the secondary trustee on one of the Cohen trust accounts – the Cohen Family Trust – which gave her additional authority to issue instructions in Mr. Cohen's absence. The "Client" on each new 2002 contract was identified as "Kelley Lynch and Leonard Cohen." It is my recollection that this recognized their relatively interchangeable execution of account documentation on Mr. Cohen's behalf.

Greenberg Affidavit, ¶ 5.

Mr. Greenberg avers that the Tactical and G&A Agreements were among a series of contracts that Tactical and G&A utilized early in 2002, intending to supersede all existing contracts with clients. The new contracts "contain limited arbitration provisions that stipulate

5

venue in Colorado and AAA arbitration." Greenberg Affidavit, ¶ 4.

Mr. Cohen has submitted an abundance of materials intended to demonstrate that the plaintiffs are bound by the rules of the National Association of Securities Dealers, Inc. ("NASD") to arbitrate their claims before the NASD's dispute resolution entity. As the plaintiffs concede, Greenberg & Associates Securities, Inc. is a member of the NASD. Mr. Cohen argues that the other plaintiffs also come under NASD arbitration rules by principles of agency and corporate veil piercing. However, the plaintiffs have produced a letter from the NASD, mailed to Mr. Cohen after Mr. Cohen filed an arbitration complaint against the plaintiffs in an NASD venue in Los Angeles, California, denying that the NASD has jurisdiction over Agile Group, LLC, Tactical, and G&A. The letter indicates that the NASD is willing to arbitrate Mr. Cohen's claims if Mr. Cohen provides a pre-dispute agreement to arbitrate or a court order mandating arbitration.

In light of the NASD's declination, I will not consider the materials Mr. Cohen has produced concerning the inter-relations among the plaintiffs and their purported connections to the NASD. First, I will not second-guess the NASD's evaluation of the limits of its own jurisdiction. Second, the claims Mr. Cohen has asserted in his arbitration complaint are not before me; the existence of Mr. Cohen's arbitration claims in California does not affect the narrow question I must answer here.

The plaintiffs proffer a limited partnership agreement ("ASF Agreement") governing an entity known as Agile Safety Fund, LP ("ASF"). On February 26, 2002, Ms. Lynch signed the ASF Agreement on behalf of an entity known as Traditional Holdings, LLC ("Traditional"). Mr. Greenberg avers, and Mr. Cohen does not dispute, that Ms. Lynch and Mr. Cohen jointly owned Traditional; that Traditional subscribed to ASF as a limited partner and invested significant

portions of its assets in ASF; that this arrangement effectuated the plaintiffs' investment plan for Mr. Cohen's assets; and that all was performed pursuant to the Tactical and G&A Agreements. Indeed, in his complaint to the NASD, a copy of which he has provided, Mr. Cohen alleged that Traditional was created to hold and invest his assets for his benefit during his lifetime, that he gave Ms. Lynch authority to manage Traditional, and that he was aware of Traditional's investment in ASF.

The ASF Agreement contains no arbitration clause. It requires that any action or proceeding arising out of it "must be commenced and prosecuted in the State of Colorado." ASF Agreement §14.06. It provides that the partners may enforce the rights and obligations contained in it "by specific performance, injunction or other equitable remedy" and "in equity as well as at law or otherwise."   ASF Agreement §14.12(b).

### III.  Discussion

I first must determine which, if any, arbitration agreement controls. I can resolve this fact question based upon the materials the parties have provided. Second, I must determine whether the plaintiffs' claims come under the governing arbitration clause. That question I resolve as a matter of law. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002). As an initial matter, I note that no plaintiffs other than Tactical were parties to the 1997 Agreement.

7

**A.     Which agreement governs**

The plaintiffs assert that the Tactical and G&A Agreements expressly supersede the 1997 Agreement.  Mr. Cohen points out that he never signed the 2002 Agreements and contends that Ms. Lynch acted on her own behalf, without his authority, when she signed.  Both parties have focused on the question of Ms. Lynch's actual authority.

The parties have not stipulated whether Colorado or California law applies.  However, both Colorado and California courts have recognized the doctrine of apparent authority in recent decisions.  *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402 (Colo. App. 2004); *Seneca Ins. Co. v. County of Orange*, 13 Cal. Rptr. 3d 1 (Cal. App. 2004).

In *Rush Creek Solutions*, the Colorado Court of Appeals ruled that, in the absence of express authority, a purported principal may be bound by the actions of his agent when his written or spoken words or other conduct "causes a person to believe that the principal consents to have the act done on his behalf by a person purporting to act for him."  *Rush Creek Solutions*, 107 P.3d at 407.  The court held that an agent who at all times was authorized to enter into contracts on behalf of a Native American tribe had apparent authority to waive sovereign immunity for the tribe because nothing appeared in the authorization to limit the agent's exercise of authority.  *Id*.

In *Seneca Ins. Co.*, the California Court of Appeal stated that a principal is liable for the act of an ostensible agent if: 1) the person dealing with the agent does so with a reasonable belief in the agent's authority; 2) the belief is generated by some act or neglect of the principal sought to be charged; and 3) the third person in relying on the agent's apparent authority is not guilty of negligence.  *Seneca Ins. Co.*, 13 Cal. Rptr. 3d at 6.

Ms. Lynch had apparent authority to sign the 2002 Agreements on Mr. Cohen's behalf

under both *Rush Creek Solutions* and *Seneca Ins. Co.*. As Mr. Greenberg stated in his affidavit and Mr. Cohen alleged in his NASD complaint, Mr. Cohen granted to Ms. Lynch the authority to oversee and manage the investment of his assets. The plaintiffs possessed a durable power of attorney that Mr. Cohen had granted to Ms. Lynch. Mr. Cohen designated Ms. Lynch the secondary trustee of one of his trusts, granting to her ostensible authority to issue instructions in his absence. He allowed Ms. Lynch for several years to execute on his behalf documents that the plaintiffs tendered. By all of this conduct, Mr. Cohen caused the plaintiffs reasonably to believe that Ms. Lynch had authority to execute agreements on his behalf. Mr. Cohen in no way expressed to the plaintiffs limitations on Ms. Lynch's authority and the plaintiffs demonstrated no negligence by relying upon the long-standing practice. *See also*, *Garrison v. Superior Court*, 33 Cal. Rptr. 3d 350 (Cal. App. 2005) (daughter had authority to enter into an arbitration agreement on mother's behalf where mother granted daughter a durable power of attorney without limitations on the exercise of authority).

Though the signature lines over Mr. Cohen's name remain blank, it is not reasonable to infer that Ms. Lynch signed the documents solely on her own behalf. Both the Tactical Agreement and the G&A Agreement identify Mr. Cohen and Ms. Lynch as the CLIENT. And, as Mr. Cohen alleged in his NASD complaint, the purpose of the arrangement was to manage his assets for his benefit. Indeed, the wrongs he supposes the plaintiffs to have committed consist primarily of allowing Ms. Lynch unfettered access to his assets, which the plaintiffs managed pursuant to the Tactical, G&A, and ASF Agreements.

Mr. Cohen cites *Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131 (N.D. Cal. 2003) for the proposition that the arbitration clause in the 1997

9

Agreement survived the execution of the 2002 Agreements. An arbitration provision in a contract survives the termination of that contract unless the parties expressly or clearly imply an intent to override this presumption. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998); *GATX Management Services, LLC v. Weakland*, 171 F. Supp. 2d 1159, 1164 (D. Colo. 2001); *Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1108 (D. Colo. 1999). Here, the parties have expressly overridden the presumption of continuity. Both 2002 Agreements expressly "supersede[] and replace[], in [their] entirety, all previous investment advisory agreement(s) between the parties."

*Homestake Lead* is not contrary. In that case, the court concluded that an arbitration clause survived a subsequent agreement, which expressly incorporated the prior agreement and excepted the arbitration clause from replacement. The court concluded that the parties did not intend to supersede the arbitration clause. *Homestake Lead*, 282 F. Supp. 2d at 1142-1143.

The Tactical and G&A Agreements control here. By their express terms, they supersede the 1997 Agreement.

**B.     Whether the claims come under the agreement**

"To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Cummings v. Fedex Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005).

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.* Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of

>even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id.* (emphasis original), quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001), *cert. denied*, 534 U.S. 1020, 122 S. Ct. 546, 151 L. Ed. 2d 423 (2001).

In *Cummings*, the court interpreted a clause that subjected to arbitration disputes arising out of termination of the contract "but no others." *Cummings*, 404 F.3d at 1260. The court concluded, "[T]he parties clearly manifested an intent to narrowly limit arbitration to specific disputes regarding the termination." *Id.* at 1262.

Here, as in *Cummings*, the Tactical and G&A Agreements address matters not encompassed within the arbitration clauses; the scope of the Agreements and the scope of the arbitration clauses are not contiguous. The parties agreed to arbitrate disputes pertaining to the plaintiffs' services but not all disputes arising out of the Agreements. *Gelco Corp. v. Baker Industries, Inc.*, 779 F.2d 26, 28 (8th Cir. 1985). I therefore find and conclude that the parties manifestly intended narrowly to limit the scope of the arbitration clauses.

Evidence external to the Agreements commends this conclusion. The 2002 arbitration clauses are considerably more circumscribed than the clause contained in the 1997 Agreement, which required arbitration of "[a]ny dispute or controversy rising out of or relating to this Agreement, any document or instrument delivered pursuant to, in connection with, or simultaneously with this Agreement or any breach of this Agreement or such documentation or instrument, or with respect to the relationship between" Tactical and Mr. Cohen. Also, the ASF Agreement, which Ms. Lynch signed on Mr. Cohen's behalf on February 26, 2002, expressly

reserves to ASF partners all legal and equitable remedies and contemplates the filing of actions and proceedings. All of these provisions are consistent with Mr. Greenberg's objective, expressed in his affidavit, of limiting the disputes that the plaintiffs would be required to arbitrate.

"Under a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview." *Cummings*, 404 F.3d at 1262. The plaintiffs' claims in this case – for allegedly tortious conduct in which Mr. Cohen engaged – are collateral to the plaintiffs' provision of services, which constitutes the only arbitrable subject matter. *Id*. at 1262.

Accordingly, it is ORDERED that:

1) Mr. Cohen's motion to compel arbitration [38, 39] is DENIED.

Dated: December   21  , 2005, in Denver, Colorado.

                                                    BY THE COURT:

                                                      s/Lewis T. Babcock  
                                                    Lewis T. Babcock, Chief Judge