IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No.  05-cv-01233-LTB-MJW

NATURAL WEALTH REAL ESTATE, INC., d/b/a Agile Advisors, Inc. a Colorado
corporation,
TACTICAL ALLOCATION SERVICES, LLC, d/b/a Agile Allocation Services, LLC, a
Colorado limited liability company,
AGILE GROUP, LLC, a Delaware limited liability company,
GREENBERG & ASSOCIATES SECURITIES, INC., d/b/a Agile Group, a Colorado
corporation, and
NEAL R. GREENBERG, a Colorado resident,

        Plaintiffs and Counterclaim Defendants,

v.

LEONARD COHEN, a Canadian citizen residing in California,

        Defendant and Counterclaim Plaintiff, and

KELLEY LYNCH, a United States citizen residing in California, and
JOHN DOE, Numbers 1-25,

        Defendants,

v.

TIMOTHY BARNETT, a Colorado citizen,

        Counterclaim Defendant.

_____

ORDER
_____

        The defendant, Leonard Cohen, moves for partial dismissal of the Second Amended

Complaint of the plaintiffs.  This motion is the latest of a plethora filed in this case during its

nascency.  Though the ink is barely dry on the plaintiffs' reply to Mr. Cohen's counterclaims, this

Court has previously disposed of a motion to compel arbitration, a motion to dismiss, a motion

for attorney fees, and a motion for leave to file a second amended complaint.  The pending motion

is adequately briefed and oral argument will not materially aid its resolution.

The attorneys, apparently unable to agree on anything, also dispute the propriety of a

certificate of review, which Mr. Cohen proffers pursuant to Colo. Rev. Stat. § 13-20-602.  Mr.

Cohen has filed a motion for leave to file the certificate.  The plaintiffs and Timothy Barnett move

for judgment on the pleadings dismissing several of Mr. Cohen's counterclaims in part on the

ground that a certificate is lacking.  Briefing of these motions is not yet complete and this latest

demonstration of fractiousness must be addressed in yet another, subsequent order.

## I.  Plaintiffs' allegations

The allegations of the Second Amended Complaint, stripped of extraneous and salacious

content, are substantially the following.  In 1996, Mr. Cohen, a resident of California, retained the

plaintiff Tactical Allocation Services, LLC ("Tactical"), directed by the plaintiff Neal Greenberg

and headquartered in Boulder, Colorado, to invest for him the assets placed into three charitable

trusts.  The assets derived from sales of Mr. Cohen's intellectual property and were intended to

provide long-term financial support for him.  However, Mr. Cohen allegedly drew extravagant

sums from the trusts, depleting the principal amounts and impeding the plaintiffs' efforts

successfully to invest the funds in profitable ventures.

The defendant Kelley Lynch, Mr. Cohen's manager, oversaw and had power of attorney

over all of Mr. Cohen's financial dealings.  Mr. Greenberg allegedly warned Ms. Lynch and Mr.

Cohen on occasions that Mr. Cohen was spending too much and, absent a change of habit, would

become destitute.  Ms. Lynch and Mr. Cohen dismissed Mr. Greenberg's forecasts.

In April, 2001, Mr. Cohen sold additional intellectual property.  Upon the advice of a tax

attorney, Richard Westin, who is not a party to this case, Mr. Cohen conveyed the intellectual property to an entity of his creation, called Traditional Holdings LLC, in which he held a one percent interest. Ms. Lynch controlled Traditional Holdings with a 99% ownership interest. Traditional Holdings sold the intellectual property to Sony Music International and received from Sony the proceeds. It then served as an annuity for Mr. Cohen, under Ms. Lynch's management. This arrangement enabled Mr. Cohen to benefit financially from the sale without suffering adverse tax consequences. Mr. Westin advised Mr. Cohen that Ms. Lynch's controlling interest, though favorable for tax purposes, gave her considerable discretion over Mr. Cohen's affairs. Mr. Cohen allegedly indicated that he trusted Ms. Lynch. None of the plaintiffs were involved in the creation or management of Traditional Holdings.

Traditional Holdings hired the plaintiffs to invest its assets, an amount approaching five million dollars. The plaintiff Agile Group LLC was commissioned to perform the service. It allegedly kept Mr. Cohen and Ms. Lynch apprised of its efforts by means of monthly statements and other communications. Similarly, Tactical communicated monthly with Mr. Cohen concerning the assets under its management. Mr. Cohen instructed the plaintiffs to follow Ms. Lynch's directions concerning management of Traditional Holdings' assets. Purportedly at Mr. Cohen's direction and on his behalf, Ms. Lynch continued to make unsustainable withdrawals from the trusts and from Traditional Holdings.

By January 16, 2004, Ms. Lynch had reduced Traditional Holdings' assets to $2.1 million. Mr. Greenberg admonished Mr. Cohen, by letter of that date, to slow his diminution of the funds, to no avail. By June 25, 2004, Mr. Cohen had withdrawn an additional $1,170,000 from Traditional Holdings.

3

In October, 2004, Mr. Cohen and Ms. Lynch allegedly parted ways and began to issue competing directives to the plaintiffs.  Each blamed the other for Mr. Cohen's financial distress.  Mr. Cohen claimed that Ms. Lynch had deprived him of substantial sums of money.  Thereafter, apprising as slim their chances of recovering money from Ms. Lynch, Mr. Cohen and his personal attorney, Robert Kory (previously dismissed from this case for lack of personal jurisdiction), allegedly conspired with two other persons, Steve Lindsay and Betsy Superfon, to extort the lost sums from the plaintiffs.  This they attempted by asserting spurious claims and demanding that the plaintiffs elicit a settlement from their insurance carrier or submit to private mediation.  They tried to compel Ms. Lynch to participate in their project by, among other tactics, having her arrested on false pretenses and paying paroled convicts to make false accusations against her son.  However, rather than cooperating with Messrs. Cohen and Kory, Ms. Lynch informed the plaintiffs of the scheme and documented for them Mr. Cohen's chicanery.  The plaintiffs then filed their complaint in this case.

Mr. Kory, acting on Mr. Cohen's behalf, sent a demand letter to Mr. Greenberg's attorney, wrongly accusing the plaintiffs of fraud and various breaches of fiduciary duty.  After the plaintiffs filed this lawsuit, Messrs. Cohen and Kory allegedly used Mr. Cohen's fame as a prominent recording artist to publish defamatory statements about the plaintiffs.  They posted their calumnies on Mr. Cohen's web site and submitted them to the press, blaming the plaintiffs for the loss of the monies.

The Second Amended Complaint delineates ten claims.  These are defamation; commercial disparagement; interference with prospective business advantage; unjust enrichment; civil extortion; civil conspiracy; violation of the Colorado Organized Crime Control Act, Colo. Rev.

4

Stat. § 18-17-101 *et seq.* ("COCCA"); injunctive relief; declaratory judgment; and interpleader, against Ms. Lynch and Mr. Cohen, to determine rightful ownership of the remaining Traditional Holdings funds.

## II.  Discussion

Mr. Cohen moves for dismissal of all but the plaintiffs' defamation, commercial disparagement, unjust enrichment and interpleader claims.  I must first determine whether California or Colorado law governs the challenged claims.

### A.      Choice of law

A federal court sitting in diversity must apply the choice-of-law provisions of the forum state.  *Shearson Lehman Bros., Inc. v. M & L Investments*, 10 F.3d 1510, 1514 (10th Cir. 1993). Colorado has adopted the "most significant relationship test" of Restatement (Second) Conflicts of Laws (1971) for tort actions.  *Hawks v. Agri Sales, Inc.*, 60 P.3d 714, 715 (Colo. Ct. App. 2001).  The Restatement generally provides,

> (1)  The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2)  Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> > (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflicts of Laws § 145 (1971).

Reference to the factors identified in Section 145(2) alone does not dispose of the

question.  The plaintiffs suffered alleged injury predominantly in Colorado, where they reside.

Mr. Cohen engaged in the allegedly tortious conduct in California, where he resides.  Mr. Cohen

and Traditional Holdings engaged the plaintiffs in Colorado to manage Mr. Cohen's assets for his

benefit in California.

> The comments to Section 145 provide additional guidance.  Comment c states, *inter alia,*
>
> [T]he interest of a state in having its tort rule applied in the determination of a particular
> issue will depend upon the purpose sought to be achieved by that rule and by the relation
> of the state to the occurrence and the parties.  If the primary purpose of the tort rule
> involved is to deter or punish misconduct, as may be true of rules permitting the recovery
> of damages for alienation of affections and criminal conversation, the state where the
> conduct took place may be the state of dominant interest and thus that of most significant
> relationship... .  On the other hand, when the tort rule is designed primarily to compensate
> the victim for his injuries, the state where the injury occurred, which is often the state
> where the plaintiff resides, may have the greater interest in the matter.

And the Restatement explains that the relative importance of the factors varies according to the

tort involved.  Comment f states, *inter alia*,

> In situations involving the multistate publication of matter that injures the plaintiff's
> reputation... or causes him financial injury... or invades his right of privacy... the place of
> the plaintiff's domicile, or on occasion his principal place of business, is the single most
> important contact for determining the state of the applicable law.

> The substance of the plaintiffs' interference with prospective business advantage claim is

that Mr. Cohen disparaged them in media accessible in multiple states and thus encouraged

potential clients to look elsewhere for service.  Mr. Cohen's multi-state publication of matter,

which allegedly caused financial injury to the plaintiffs, is most closely analogous to commercial

disparagement or defamation.  Indeed, the same allegations predicate the plaintiffs' defamation,

commercial disparagement, and interference with prospective business advantage claims.  As the

comments to Section 145 suggest, and as Section 150 makes explicit, Colorado – the state of Mr.

Greenberg's domicile and the corporate-plaintiffs' principal place of business – has the most significant relationship to the alleged wrongdoing.  Restatement (Second) of Conflicts of Laws § 150 (1971).

The plaintiffs' claims for civil extortion and civil conspiracy rest upon Messrs. Cohen's and Kory's alleged secret plot to force the plaintiffs into mediation by threatening publicly to assert spurious claims.  Civil extortion in California (Colorado has recognized no such claim) constitutes a cause of action for the recovery of money obtained by the wrongful threat of criminal or civil prosecution.  *Fuhrman v. California Satellite Systems*, 231 Cal. Rptr. 113, 122 (Cal. Ct. App. 1986), *overruled on other grounds*, *Silberg v. Anderson*, 786 P.2d 365 (Cal. 1990).  "It is essentially a cause of action for moneys obtained by duress, a form of fraud."  *Id.* Not all unjust extractions are cognizable.  The Restatement admonishes,

> The threat of beginning a civil action to enforce a claim, if made in good faith and unaccompanied by threatened seizure of property of the person or by other oppressive circumstances, is not duress and, if payment is made without mistake of fact, there can be no restitution even though the claim is baseless and the claimant is unreasonable in believing that it has validity.

Restatement (First) of Restitution § 71 cmt. b (1937).  Properly viewed, then, the gravamen of the plaintiffs' claim is not the unwarranted payment by them in response to a threat of litigation but rather the bad faith of Mr. Cohen in threatening suit.  Thus, California, the state in which Mr. Cohen allegedly acted, possesses the dominant interest and its law applies to this claim.

The conspiracy claim allows joint recovery of damages against all defendants who united or cooperated in inflicting a tortious wrong – here, civil extortion – against the plaintiffs.  *Mox, Inc., v. Woods*, 262 P. 302, 303 (Cal. 1927); *More v. Johnson*, 568 P.2d 437, 439-440 (Colo. 1977).  "A conspiracy cannot be alleged as a tort separate from the underlying wrong it is

organized to achieve." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 459

(Cal. 1994). "A bare agreement among two or more persons to harm a third person cannot injure

the latter unless and until acts are actually performed pursuant to the agreement. Therefore, it is

the acts done and not the conspiracy to do them which should be regarded as the essence of the

civil action." *Id.* at 457.

The California Supreme Court discerned from these principles a clear distinction between

criminal and civil conspiracy. "The gist of the crime of conspiracy is the agreement to commit the

unlawful act, while the gist of the tort is the damage resulting to the plaintiff from an overt act or

acts done pursuant to the common design." *de Vries v. Brumback*, 349 P.2d 532, 536 (Cal.

1960) (citations omitted). Similarly, the Colorado Supreme Court has stated, "The essence of a

civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from it." *Jet

Courier Service, Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989). Thus, Colorado, the state where

the plaintiffs here reside and allegedly suffered injury, is the state with the dominant interest.

The COCCA claim must be analyzed under the Colorado statute that predicates it; the

parties do not identify an analogous California statute. The parties agree that the claims for

injunctive and declaratory relief are procedural, and therefore governed by federal law.

### B.    The claims

#### 1.    Interference with prospective business advantage

Colorado recognizes the tort of intentional interference with a prospective business

relation and defines the tort with reference to the Restatement (Second) of Torts (1979). *Amoco

Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995). Section 766B of the Restatement provides,

One who intentionally and improperly interferes with another's prospective contractual

relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
 (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
 (b) preventing the other from acquiring or continuing the prospective relation.

Demonstration of the tort requires a showing of intentional and improper interference preventing formation of a contract. *Amoco Oil Co.*, 908 P.2d at 500.

Mr. Cohen challenges as inadequate the plaintiffs' allegations of protected relationships. The plaintiffs have identified two prospective clients who declined to engaged the plaintiffs after referencing Mr. Cohen's alleged calumnies, which they had read. One reneged on a prior pledge to invest with the plaintiffs after her accountant discovered Mr. Cohen's press release on the internet. The other was referred to the plaintiffs by a current client before finding the press release on the internet. Taking these allegations as true, as I must at this stage, I find that the plaintiffs have alleged a "reasonable likelihood or probability that a contract would have resulted." *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995), *cert. denied*, 516 U.S. 810, 116 S. Ct. 58, 133 L. Ed. 2d 22 (1995). *See Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 794 (D. Colo. 1985); *Behunin v. Dow Chemical Co.*, 650 F. Supp. 1387, 1393 (D. Colo. 1986).

Citing *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003), Mr. Cohen next argues that the claim fails for failure to plead that he acted for the purpose of interfering with a particular relationship of which he had knowledge. However, as I determined above, Colorado, not California law applies to this claim. Furthermore, the *Korea Supply* court held,

We conclude that the tort of intentional interference with prospective economic advantage does not require a plaintiff to plead that the defendant acted with the specific intent, or purpose, of disrupting the plaintiff's prospective economic advantage. Instead, to satisfy the intent requirement for this tort, it is sufficient to plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action.

*Id*. at 949-950.

The parties have identified no Colorado cases explicating the requisite intent. However, the Restatement, which the Colorado courts have adopted, accords with the *Korea Supply* decision. "The interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) of Torts § 766B cmt. d (1979).

The Restatement goes on to explain that a defendant's purpose goes to the question whether any interference was improper.

> One [factor] is the actor's motive and another is the interest sought to be advanced by him. Together these factors mean that the actor's purpose is of substantial significance. If he had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose, the interference may be found to be not improper.

*Ibid*.

The end for which Mr. Cohen acted when he released his statement on the internet and to the press does not commend a finding of impropriety. The plaintiffs allege that Messrs. Cohen and Kory kept their assertions secret as they attempted to force the plaintiffs to submit a claim to their insurer. Only after the plaintiffs filed this pre-emptive suit did Mr. Cohen respond publicly with his version of events. Even assuming, as I must, that Mr. Cohen's public assertions were defamatory and untrue, I am left with no grounds on which to find that any interference with the plaintiffs' prospective business relations was anything other than incidental to his purpose. The plaintiffs allege that Mr. Cohen's invariable purpose has been to obtain from them the monies he could not obtain from Ms. Lynch.

10

The Restatement cautions that other factors bear upon the degree of impropriety and refers to Section 767.

> To determine whether the defendant acted improperly, a court is to consider: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relation between the parties.

*Krystkowiak v. W.O. Brisben Companies, Inc.*, 90 P.3d 859, 873 (Colo. 2004) (*citing* Restatement (Second) of Torts § 767 (1979)).

Nothing in the Second Amended Complaint indicates that Mr. Cohen persuaded or intimidated prospective clients into rejecting the plaintiffs' services. *Krystkowiak*, 90 P.3d at 874. Nowhere do the plaintiffs allege that Mr. Cohen used or threatened physical violence, fraud, or civil or criminal prosecution against their prospective clients. *Amoco Oil Co.*, 908 P.2d at 502. To the extent that Mr. Cohen's motives and interests can be discerned from the allegations, it appears that he was attempting to refute the plaintiffs' allegations and to strong-arm the plaintiffs into mediating his purportedly spurious claims. And Mr. Cohen compromised the plaintiffs' reputation only after they first filed suit against him. The claim for intentional and improper interference must be dismissed.

### 2. Civil extortion

California recognizes the tort of civil extortion and defines it as "the recovery of money obtained by the wrongful threat of criminal or civil prosecution." *Fuhrman*, 231 Cal. Rptr. at 122. "To be actionable the threat of prosecution must be made with the knowledge of the falsity of the claim." *Id.* Also, the plaintiff must have paid the money demanded. *Id.* Expenditures of

attorney fees do not constitute actual damages for the purpose of establishing the tort. *Id.*

The plaintiffs allege that the scheme concocted by Messrs. Cohen, Kory, and Lindsay and Ms. Superfon failed when Ms. Lynch exposed their plot. The plaintiffs did not accede to Mr. Cohen's demands for repayment. Nor do they allege that they submitted a claim to their insurer. They claim only to have expended corporate resources providing information about Traditional Holdings' investments to Mr. Cohen – an effort, they concede, that they undertook to be cooperative, not in response to undue threats – and to have paid attorney fees prosecuting this action. The claim for civil extortion must be dismissed.

### 3.      Civil conspiracy

The plaintiffs must allege the five elements of a civil conspiracy claim. "There must be: (1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Jet Courier Service*, 771 P.2d at 502. "The essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from it." *Id.*

The conspiracy claim fails for two reasons. First, the unsuccessful extortion attempt by Messrs. Cohen, Kory, and Lindsay and Ms. Superfon – the alleged unlawful overt act – does not serve. "[C]onspiracy is a derivative cause of action that is not actionable per se." *Double Oak Const., L.L.C. v. Cornerstone Development Intern., L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003). "If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Id.* The alleged civil extortion provides no cause of action because civil extortion in not recognized in Colorado and, in any event, the plaintiffs did

12

not accede to Mr. Cohen's demands.

Messrs. Cohen's and Kory's scheme to publish libelous defenses of their conduct might predicate a distinct conspiratorial objective. However, this purported scheme lacks the requisite numerosity of participants because an agent – Mr. Kory here – "cannot be held liable for conspiracy with his principal where the agent acts within the scope of his authority and do not rise to the level of active participation in a fraud." *Astarte, Inc. v. Pacific Indus. Systems, Inc.*, 865 F. Supp. 693, 708 (D. Colo. 1994). Mr. Kory's alleged participation in the published defense of his client, whether or not that defense was true in all respects, was well within the scope of his authority as an attorney. Because Mr. Lindsay and Ms. Superfon are not alleged to have participated in the scheme to defame the plaintiffs, Mr. Cohen is not alleged to have conspired with anyone for that purpose.

Second, the plaintiffs have alleged no damages. Conceding that they made no payments in response to the threats of litigation, the plaintiffs nevertheless propose three categories of damages. First, they claim to suffered injury to their reputation. However, any such injury resulted not from the failed extortion attempt, which the plaintiffs allege Mr. Cohen veiled in secrecy, but rather from the subsequent alleged defamation. Second, they allege that they diverted corporate resources in order to respond to Messrs. Cohen's and Kory's demands for information concerning Traditional Holdings in the weeks following Ms. Lynch's dismissal. However, nothing in the Second Amended Complaint indicates that the plaintiffs undertook these efforts as a result of the extortion attempt. Indeed, the Second Amended Complaint proclaims that Mr. Kory extolled the plaintiffs' voluntary cooperation in the aftermath of the Cohen-Lynch separation. Third, the plaintiffs assert that they may recover attorney fees expended in defense of

Mr. Cohen's advances.  However, attorney fees are recoverable as damages only when they accrue in litigation with a third party that naturally and probably results from the defendant's wrongful act.  *Stevens v. Moore and Co. Realtor*, 874 P.2d 495, 496 (Colo. App. 1994).  Absent this or some other exception, Colorado adheres to the American Rule, under which each party bears its own fees.  *Bunnett v. Smallwood*, 793 P.2d 157, 160, 163 (Colo. 1990); *Double Oak Const.*, 97 P.3d at 150.

### 4.    COCCA

Colo. Rev. Stat. § 18-17-104(3) provides, "It is unlawful for any person employed by, or associated with, any enterprise to knowingly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt."

> To state a primary violation of COCCA section 104(3), a plaintiff is required to prove the defendant (1) through the commission of two or more predicate acts (2) which constitute a pattern (3) of racketeering activity (4) directly or indirectly conducted or participated in (5) an enterprise and (6) the plaintiff was injured in its business or property by reason of such conduct.

*F.D.I.C. v. Refco Group, Ltd.*, 989 F. Supp. 1052, 1074 (D. Colo. 1997).  Mr. Cohen argues that the Second Amended Complaint fails adequately to allege the existence of an enterprise, predicate acts, and injury.

The plaintiffs' COCCA claim fails for the same reasons that their conspiracy claim miscarried: they allege that they did not succumb to Mr. Cohen's machinations.  The ill effects of Mr. Cohen's litigation threats and the purported conspirators' attempts to secure Ms. Lynch's perjurious cooperation were limited to the plaintiffs' expenditures of attorney fees.  Civil remedies for violations of COCCA are available only to a person "injured by reason of" a violation.  Colo. Rev. Stat. § 18-17-106(7).  The plaintiffs are required to allege that one or more injuries resulted

14

from each of the predicate acts. *Floyd v. Coors Brewing Co.*, 952 P.2d 797, 803 (Colo. App. 1997), *rev'd on other grounds*, 978 P.2d 663 (Colo. 1999). They have alleged no damage resulting to them from the predicate acts.

Again, the plaintiffs reference the injury to their reputation resulting from Mr. Cohen's calumny. They rightly identify the defamation as the source of any damages they have suffered. However, the published statements were not part of – indeed, were inconsistent with – any pattern of racketeering activity. Indeed, the allegations are that Messrs. Cohen and Kory reversed their tactics – changing from secret extortion to public declamation – after the extortion scheme failed.

Subsection 4 of Section 18-17-104 makes it unlawful to "conspire or endeavor" to violate Subsection 3. Citing *People v. Young*, 694 P.2d 841 (Colo. 1985) and *New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363 (Colo. App. 1993), the plaintiffs argue that Mr. Cohen violated Subsection 4 by his mere attempt to violate Subsection 3. However, as the *New Crawford Valley* court made clear, civil remedies for conspiracies and attempts under Subsection 4 are available only to those who have suffered actual damages. *New Crawford Valley*, 877 P.2d at 1374. As explained above, the plaintiffs have not satisfied this requirement.

### 5.      Injunction

Mr. Cohen asks me to dismiss the injunction claim because it constitutes a prayer for prior restraint of his speech. Citing *New York Times Co. v. United States*, 403 U.S. 713, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971) he notes that injunctions against future speech are disfavored under the First Amendment. The plaintiffs respond that defamation is properly enjoined because it is not protected speech. They also point out that Mr. Cohen already published the speech and

that an injunction would merely prohibit him from repeating the alleged calumny.

When constructed narrowly to restrain only unprotected speech, injunctions against the assertion of factual claims do not impermissibly infringe upon First Amendment rights. *United States v. Bell*, 414 F.3d 474, 484 (3d Cir. 2005); *United States v. Kaun*, 827 F.2d 1144, 1150, 1151-1152 (7th Cir. 1987); *United States v. White*, 769 F.2d 511, 517 (8th Cir. 1985). *See also B. Willis, C.P.A., Inc. v. Goodpaster*, 183 F.3d 1231, 1233-1234 (10th Cir. 1999), cert. denied, 528 U.S. 1046, 120 S. Ct. 581, 145 L. Ed. 2d 483 (1999). A defamatory statement of fact not touching a matter of public concern or a public figure does not enjoy the First Amendment protection identified in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). *Quigley v. Rosenthal*, 327 F.3d 1044, 1057-1061 (10th Cir. 2003), *cert. denied*, 540 U.S. 1229, 124 S. Ct. 1507, 158 L. Ed. 2d 172 (2004). *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974). It is equally well settled that speech on matters calculated to redress a personal grievance does not involve a matter of public concern. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 788 (10th Cir. 2004), *cert. denied*, 543 U.S. 812, 125 S. Ct. 47, 160 L. Ed. 2d 16 (2004).

Mr. Cohen replies that the Second Amended Complaint's prayer is too broad; it does not merely ask me to forfend the repetition of defamatory speech but rather seeks the suppression of any statements about the plaintiffs that do not meet with the plaintiffs' prior approval. While the scope of the requested injunction is, no doubt, unduly ambitious, the proper response is not dismissal of the entire claim. Assuming the plaintiffs' allegations to be true, I find it possible to craft a constitutional injunction in response to the plaintiffs' prayer and I will not dismiss this cause of action.

16

### 6.      Declaratory judgment

Mr. Cohen asks me to exercise my discretion to dismiss the plaintiffs' declaratory judgment claim.  He argues that the requested declarations concerning the plaintiffs' lack of involvement in the management of Traditional Holdings and Ms. Lynch's authority, as attorney in fact, to manage his assets, constitute procedural fencing and are best understood as affirmative defenses to his own counterclaims.  Citing *St. Paul Fire and Marine Insurance Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995), he argues that declaratory judgment would not settle the controversy, would not clarify the legal relations at issue, and is requested merely for procedural fencing, and that resolution of these issues in the context of his own counterclaims would be more effective.

Mr. Cohen misapprehends the plaintiffs' allegations.  Foundational to the charges of the Second Amended Complaint is the assertion that Mr. Cohen accused the plaintiffs of violating duties that they did not owe.  Clarifying what obligations, if any, the plaintiffs owed to Mr. Cohen to protect him against mismanagement of Traditional Holdings will clarify the legal relations of the parties and assist in settling the controversy at the center of this action.  Furthermore, because these questions bear upon the plaintiffs' claims as well as Mr. Cohen's counterclaims, I am not convinced that the plaintiffs request declaratory judgment as a procedural fencing device.  The controversy is definite and concrete, touching the legal relations of the parties.  28 U.S.C. § 2201(a); *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989).  A live need exists for a declaration of the plaintiffs' rights and duties.  *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983-984 (10th Cir. 1994).  I decline to dismiss the declaratory judgment claim.

Accordingly, it is ORDERED that:

1) Mr. Cohen's motion to dismiss is GRANTED in part and DENIED in part; and

2) the plaintiffs' claims for intentional interference with a prospective business relation, civil

extortion, civil conspiracy, and violation of and conspiracy to violate COCCA are DISMISSED.

Dated: December __4__, 2006, in Denver, Colorado.

                                                        BY THE COURT:


                                                        ___s/Lewis T. Babcock_____
                                                        Lewis T. Babcock, Chief Judge