IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 05-cv-01233-LTB-MJW

NATURAL WEALTH REAL ESTATE, INC., d/b/a Agile Advisors, Inc. a Colorado corporation,
TACTICAL ALLOCATION SERVICES, LLC, d/b/a Agile Allocation Services, LLC, a Colorado limited liability company,
AGILE GROUP, LLC, a Delaware limited liability company,
GREENBERG & ASSOCIATES SECURITIES, INC., d/b/a Agile Group, a Colorado corporation, and
NEAL R. GREENBERG, a Colorado resident,

 Plaintiffs and Counterclaim Defendants,

v.

LEONARD COHEN, a Canadian citizen residing in California,

 Defendant and Counterclaim Plaintiff, and

KELLEY LYNCH, a United States citizen residing in California, and
JOHN DOE, Numbers 1-25,

 Defendants,

v.

TIMOTHY BARNETT, a Colorado citizen,

 Counterclaim Defendant.
_____

# ORDER
_____

 Neal Greenberg, Agile Group, LLC, and Timothy Barnett (collectively, the "counterclaim defendants") move for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), dismissing several of the counterclaims of the defendant, Leonard Cohen, against them. The motion is adequately briefed and oral argument would not materially aid its resolution. For the reasons

stated below, I GRANT the motion.

## I. Mr. Cohen's allegations

In his counterclaims against Mr. Greenberg, Agile Group, and Timothy Barnett, a vice president of the plaintiff Tactical Allocation Services, LLC ("Tactical"), Mr. Cohen alleges the following. The defendant Kelley Lynch, Mr. Cohen's manager, introduced Mr. Cohen to Mr. Greenberg in 1996 or 1997. Mr. Cohen retained Mr. Greenberg and the other plaintiffs, which Mr. Greenberg directs, to manage assets he had earned from his successful song writing and recording career.

Mr. Greenberg introduced Mr. Cohen to Richard Westin, a tax attorney who is not a party to this case. Mr. Westin, with the assistance of Mr. Greenberg and Ms. Lynch, allegedly sold Mr. Cohen's music publishing company and with the proceeds funded two charitable remainder trusts. The plaintiffs managed the trusts on Mr. Cohen's behalf. Mr. Cohen returned many of the proceeds he received from the trusts to the plaintiffs for further investment.

In 2001, Mr. Greenberg, Ms. Lynch, and Mr. Westin allegedly sold royalty rights to which Mr. Cohen was entitled under an agreement with Sony Music. Mr. Westin created Traditional Holdings LLC, into which the proceeds from the sale – $8 million – less transaction costs – more than $3 million – were deposited. Mr. Cohen alleges that neither Mr. Westin nor Mr. Greenberg informed him that Ms. Lynch held the controlling interest in Traditional Holdings. (The plaintiffs have alleged that Ms. Lynch had power of attorney over all of Mr. Cohen's financial dealings, but Mr. Cohen makes no mention of this.) Though Traditional Holdings issued an annuity contract to Mr. Cohen, the counterclaim defendants allegedly failed to place adequate constraints on Ms. Lynch's authority to control the funds. Agile Group managed the investments.

Ms. Lynch purportedly requested, and Agile Group established, a money market account, into which funds from Traditional Holdings investments could be drawn. Ms. Lynch then began requesting transfers into the account. Upon each request, Agile Group would sell some portion of Traditional Holdings' securities, then transfer the proceeds to the account, from which Ms. Lynch would make withdrawals. The plaintiffs"should have known" that Ms. Lynch's management of the assets in this way was contrary to Mr. Cohen's goals and intentions. Ms. Lynch allegedly told the plaintiffs that the withdrawals were for her own benefit and use. Agile Group accounted the withdrawals as shareholder loans and did not deduct them against the value of Traditional Holdings' assets.

The plaintiffs have alleged that they sent to Ms. Lynch and Mr. Cohen regular communications concerning the status of Traditional Holdings' investments. As Ms. Lynch withdrew increasing sums from the account, Mr. Greenberg and others warned against perceived profligacy. Mr. Cohen alleges that most of these missives and statements never reached him. Specifically, he alleges,

> The Agile Group's January 16, 2004 letter warning of the "desperate situation" reflects the Agile Group's belief that Cohen must not have understood what was happening to his money and the transactions in the account intended to fund his private annuity. However, the Agile Group also knew or had reason to believe that Cohen was unlikely to actually receive the letter because Lynch would intercept it.

Additionally, the plaintiffs allegedly sent complete account statements only to Ms. Lynch. To Mr. Cohen, the plaintiffs sent abbreviated statements, which did not fully reflect Ms. Lynch's depletion of the assets. By these purported artifices, the plaintiffs and Mr. Barnett kept Mr. Cohen ignorant of the true state of affairs until late 2004. By then, the value of Traditional Holdings' assets had diminished from $4.7 million to under $150,000. However, Mr. Cohen states that Ms. Lynch

3

withdrew approximately $592,000 with his consent and for his benefit.

## II.  Documents incorporated by reference

The counterclaim defendants proffer documents that they assert are incorporated by reference into Mr. Cohen's counterclaims, and in light of which the counterclaims must be evaluated.  Those documents that are central to Mr. Cohen's counterclaims, the authenticity of which is undisputed, are properly considered without converting the motion into a motion for summary judgment.  *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002), *cert. denied* 539 U.S. 902 (2003).  "Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).  "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *Id.*

First submitted is a July 24, 1997 Investment Advisory Agreement ("1997 Agreement") between Tactical and Mr. Cohen.  The express purpose of the 1997 Agreement was Tactical's evaluation and management of Mr. Cohen's assets, in the amount of "75 K."  The document identifies the services Tactical was to provide and the obligations each party adopted toward each other.  It disclaims, "[Tactical] provides no tax or legal advice and [Mr. Cohen] agrees that he... shall consult his... own independent tax consultant or legal counsel concerning any and all transactions, exchanges, or trades, and the legal consequences thereof."  Under the heading "REGISTERED INVESTMENT ADVISOR," Mr. Cohen represented his understanding "that [Tactical] is a Registered Investment Advisor in compliance with the Investment Advisors Act of 1940 and all applicable state authorities... ."  The 1997 Agreement stated that it "contains the full

4

and complete agreement and understanding of [Tactical] and [Mr. Cohen]. Any and all prior or contemporaneous agreements, understandings, representations, and promises have been incorporated and merged into the express written terms of this agreement." Mr. Cohen represented that Tactical had made "no oral representations or promises contrary or inconsistent with the terms and conditions of this agreement."

The Articles of Organization for Traditional Holdings ("Articles") appear. The document appoints to Ms. Lynch "100% of Class B common shares and 99.5% of Class A common shares," and to Mr. Cohen ".5% of Class A common shares." Any member is permitted to lend money to and transact any business with Traditional Holdings. The manager is responsible for, among other things, delivering to each member an annual report no later than 120 days after the close of the fiscal year. Mr. Westin signed the Articles as incorporator and pursuant to powers of attorney, which accompany the Articles, appointing him to sign on behalf of Mr. Cohen and Ms. Lynch.

There follows the Operating Agreement for Traditional Holdings, which Ms. Lynch and Mr. Cohen both signed as members. The Operating Agreement names both Ms. Lynch and Mr. Cohen as managers, with enumerated rights and responsibilities. Each manager is an agent of Traditional Holdings, with the authority to bind it contractually.

An annuity agreement between Traditional Holdings and Mr. Cohen purports to provide for the sale of Mr. Cohen's intellectual property to Traditional Holdings in exchange for fixed monthly payments to Mr. Cohen. Ms. Lynch signed the document on Traditional Holdings' behalf. Mr. Cohen signed as the annuitant.

A limited partnership agreement for the Agile Safety Fund, LP ("Fund"), purports to include Traditional Holdings as a limited partner. Ms. Lynch's signature appears for Traditional

Holdings. The Fund manages the assets of its constituent partners through investment managers selected by its general partner, Agile Safety Group, LLC. (The relationship, if any, between this entity and Agile Group, LLC and Greenberg & Associates Securities, Inc., d/b/a Agile Group, is not revealed. However, an accompanying Private Placement Memorandum for the Fund identifies the plaintiff Mr. Greenberg as the Chief Executive Officer of Agile Safety Group, LLC.) The recitation of the partners' respective rights and obligations in the Fund's partnership agreement consists of twenty-eight pages.

A separate subscription agreement for the Fund sets forth the particular terms of agreement between Agile Safety Group, LLC and Traditional Holdings. The document, signed by Ms. Lynch, assesses Traditional Holdings' initial capital contribution at two million dollars. Ms. Lynch's name and a Los Angeles address appear in response to a request for Traditional Holdings to identify "the names and addresses of the officers, directors, partners, managers, members and principal beneficiaries as the case may be."

Next come the storied warning letters from Mr. Greenberg to Mr. Cohen, which Mr. Cohen claims not to have received. A two-page, January 16, 2004 letter from Mr. Greenberg to Mr. Cohen references a prior, April 13, 2001 warning letter and a March 21, 2002 conversation between the two men concerning Mr. Cohen's withdrawals and expenditures. The document continues,

> However, things have not improved despite our warnings. At this point, you only have an estimated $2.1 MM left in capital in Traditional Holdings, LLC. The rest consists of loans to you and Kelley. The total loan amount currently stands at $1,648,634 notwithstanding over $1 MM that was also withdrawn during the 2nd quarter of 2002.

The letter continues in this vein, describing in detail Mr. Cohen's assets, their availability, and

6

their management.  It also expresses Mr. Greenberg's concern over the loans to Mr. Cohen and Ms. Lynch from Traditional Holdings and the implications thereof.  Mr. Greenberg characterized Mr. Cohen's finances as "quite desperate."

A June 25, 2004 letter from Mr. Greenberg to Mr. Cohen begins, "I hate to always be the harbinger of doom, but your situation is getting quite desperate.  Since my last letter of January 16, 2004, you have taken additional withdrawals amounting to $1,170,000 from Traditional Holdings and $35,000 from the Sabbath Day CRT."  The letter expresses other concerns, including over the manner in which Mr. Cohen requested reports of his assets.  Mr. Greenberg offered to fly to Los Angeles to discuss the situation with Mr. Cohen.

The counterclaim defendants also produce various reports, addressed to Mr. Cohen but allegedly not received, disclosing the condition of his assets and the withdrawals Ms. Lynch had made purportedly on his behalf.  Also included is an email communication from Mr. Barnett's email address to Mr. Cohen, written over Mr. Greenberg's name, and a reply from Mr. Cohen indicating that he was in Bombay.

The counterclaim defendants have produced documents not incorporated into Mr. Cohen's counterclaims.  A durable power of attorney, signed by Mr. Cohen, purports to appoint Ms. Lynch as his attorney in fact.  Email communications among and between Ms. Lynch, Mr. Barnett, and Mr. Greenberg contain Ms. Lynch's instructions concerning what financial information to report to her and Mr. Cohen.  The contents of these documents are not properly before me at this stage of the proceedings.  No doubt they will reappear in support of Rule 56 motions.

I prophesy a conflagration that Mr. Cohen ought not rekindle.  An investment advisory

agreement and a financial planning agreement ("2002 Agreements"), both dated February 26, 2002 and identifying Ms. Lynch and Mr. Cohen as "the CLIENT," appear in the record.  In denying Mr. Cohen's motion to compel arbitration, filed October 11, 2005, I ruled on December 21, 2005 that Mr. Cohen is bound by the 2002 Agreements because Ms. Lynch signed them on his behalf with apparent authority.  I will not revisit my previous ruling on the force and subject-matter of the 2002 Agreements, which now comprises the law of the case, *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000), absent substantial and relevant evolution of the record.  Indeed, before filing any more motions, the parties would be well-advised to examine my numerous orders in this case and to avoid issues previously culled.  I emphasize the point because the plaintiffs and Mr. Cohen have historically induced "a wasteful expenditure of resources by [the] court[] and litigating parties."  *Id*.

### III.  Choice of law

The parties dispute which state's laws apply.  In ruling upon Mr. Cohen's recent motion to dismiss partially the plaintiffs' Second Amended Complaint, I discussed at some length the principles governing the choice of law.  I will thus abbreviate the discussion here.

Mr. Cohen's claims are conveniently consolidated in four groups.  First, he asserts a claim for breach of contract premised upon Agile Group's agreement with him to manage his money.  The counterclaim defendants do not assail this claim.  Second, he presses claims against the counterclaim defendants for fraud and negligent misrepresentation.  Third, alleged breaches of various duties predicate three claims – breach of fiduciary duty, negligence, and professional negligence.  Fourth, Mr. Cohen accuses the counterclaim defendants of aiding and abetting Ms. Lynch's purported fraud and breach of fiduciary duty.

Applying Colorado's choice-of-law provisions, *Shearson Lehman Brothers, Inc. v. M & L Investments*, 10 F.3d 1510, 1514 (10th Cir. 1993), I note that the "most significant relationship test" of Restatement (Second) Conflicts of Laws (1971) applies to both contract and tort actions. *Fire Ins. Exchange v. Bentley*, 953 P.2d 1297, 1300 (Colo. Ct. App. 1998); *Hawks v. Agri Sales, Inc.*, 60 P.3d 714, 715 (Colo. Ct. App. 2001).

Reference to the Restatement leads to the conclusion that Colorado law applies to Mr. Cohen's tort counterclaims. Mr. Cohen suffered his alleged injury in Colorado, where Agile Group managed his money, and in Kentucky, where Traditional Holdings is incorporated and resident. The counterclaim defendants performed their purportedly inconstant activities in Colorado. Though Mr. Cohen is a Canadian citizen and resides in California, the plaintiffs and Mr. Barnett reside and work in Colorado. Finally, the relationship between the parties centered around Agile Group's management of Mr. Cohen's assets, which they performed in Colorado. Restatement (Second) Conflicts of Laws § 145 (1971). Colorado law thus controls. Review of the misrepresentation claims in light of Section 148 of the Restatement yields the same result.

## IV. Professional liability

### A. Professional negligence

Because Mr. Cohen did not undertake to demonstrate good cause, I previously denied his motion to file late the certificate of review mandated in Colo. Rev. Stat. § 13-20-602(1). The counterclaim defendants again assert that the extent and nature of their duties to Mr. Cohen are not within the general knowledge of lay fact finders and that expert testimony will prove indispensable at trial. Colo. Rev. Stat. § 13-20-602(2). Dismissal of Mr. Cohen's claims for negligence, breach of fiduciary duty, and professional negligence is, they argue, thus required.

In response, Mr. Cohen makes no arguments, but instead renews his request that the Court accept his proffered certificate for the reasons stated in his prior motion. To review: Mr. Cohen argued that his claim for professional negligence does not rest upon duties that the counterclaim defendants owed to him in their professional capacities. To express the argument is to refute it.

### B.   Negligence and breach of fiduciary duty

The question, with which Mr. Cohen provides no assistance, remains whether the claims for breach of fiduciary duty and putatively simple negligence stand upon the heightened duties a licensed professional owes to his client or rather upon the common duties a lay person assumes in commonly-perceived relationships. Answer is found in *Martinez v. Badis*, 842 P.2d 245 (Colo. 1992), wherein the Colorado Supreme Court observed that the certificate is requisite to those claims that require a claimant to establish a *prima facie* case by means of expert testimony, regardless of the designations assigned to those claims by the claimant. *Id*. at 249. Thus, the filing requirement applies to every action for damages or indemnity based upon the alleged professional negligence of a licensed professional, § 13-20-602(1), including claims for negligence and breach of fiduciary duty. *Id*. at 252.

In response to Agile Group's request for dismissal, it is incumbent upon Mr. Cohen to demonstrate that no expert testimony is required to prove his claims. *Ibid* at 251. He has not done so. Indeed, he cannot do so. Expert testimony would be necessary to elucidate the parties' competing criticisms of and justifications for the formation of Traditional Holdings, its putative tax benefits, risks, controlling interests, and investment advantages. Likewise, except to the extent that the counterclaim defendants' duties are subsumed within express contractual

provisions (and thus eclipsed under the economic loss rule, discussed below), the fact finder will require opinion testimony to attain the requisite understanding of the counterclaim defendants' reporting obligations, the efficacy and reasonableness of their reliance upon Ms. Lynch's alleged instructions, and the extent of Ms. Lynch's authority. Mr. Cohen's claims for negligence, professional negligence, and breach of fiduciary duty, premised upon allegations of professional misconduct, must be dismissed. Colo. Rev. Stat. § 13-20-602(4); *Teiken v. Reynolds*, 904 P.2d 1387, 1389-1390 (Colo. Ct. App. 1995).

## V. Economic loss rule

The counterclaim defendants point out that Mr. Cohen's contract claim is predicated upon the allegation, which they admit, that the parties' relationships were governed by contracts. They argue that all of Mr. Cohen's tort claims, with the exception of his professional negligence claim (which concerns alleged activities not covered by the parties' interrelated agreements), are barred by the economic loss rule. They insist that Mr. Cohen be limited in any recovery to the terms of the bargain. *Alma v. Azco Const., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000).

Mr. Cohen argues that he should be permitted to plead his tort and contract theories in the alternative. In the typical case, Mr. Cohen would be permitted to pursue alternative theories until summary judgment. *Contrast Tuchman v. Pell Rudman Trust Co., N.A.*, 245 F. Supp. 2d 1156, 1160 (D. Colo. 2003). Here, however, Mr. Cohen has backed himself into a corner by filing motions – to compel arbitration, to dismiss the complaint, to dismiss the Second Amended Complaint, to file late a certificate of review – at every development of the pleadings. The law of the case now includes the rulings: that Ms. Lynch executed the 2002 Agreements on Mr. Cohen's behalf with apparent authority to do so; that the 2002 Agreements governed the parties'

relationships; that the 2002 Agreements identified the services that the counterclaim defendants were to perform for Mr. Cohen; and that the 2002 Agreements memorialized the counterclaim defendants' duties to Mr. Cohen, including the duty to provide periodic reports. In addition, Mr. Cohen has incorporated the Fund agreements into his counterclaims by reference. As a result, nothing prevents resolution of the question at this time.

### A.     Fraud and negligence misrepresentation

Next, Mr. Cohen objects to the dismissal of his tort claims to the extent that they are predicated upon allegations of misconduct that preceded the execution of the 2002 Agreements. The subject matter of the 1997 Agreement does not coincide with, and the 2002 Agreements postdated, the investment advice that the counterclaim defendants allegedly provided in preparation for the formation of Traditional Holdings. However, all of the purportedly fraudulent activities, upon which the remaining tort claims are based, occurred after, and in putative violation of, the 2002 Agreements. (Mr. Cohen references the irrelevant allegation that he received communications from Agile Group before he invested his lost assets with Agile Group in February, 2002.) The question, then, is whether the economic loss rule covers tort claims for fraud and negligent misrepresentation.

Absent an independent duty of care, Colorado's economic loss rule prohibits a party suffering only economic loss from asserting a tort claim for the breach of an express or implied contractual duty. *Alma*, 10 P.3d at 1264. Colorado courts have declined to employ the rule to dismiss claims for fraud and negligent misrepresentation where the contracted promise constituted the allegedly fraudulent representation and where the dishonesty inhered in the contract negotiations. *Brody v. Bock*, 897 P.2d 769, 776 (Colo. 1995); *Keller v. A.O. Smith Harvestore*

*Products, Inc.*, 819 P.2d 69, 73 (Colo. 1991). The reason for this declination is that the content of the allegedly fraudulent statement is material not for the purpose of establishing a contractual obligation but rather for demonstrating the reasonableness of the claimant's detrimental reliance upon the misrepresentation in entering into the contract. *Brody*, 897 P.2d at 776.

By contrast, where, as here, the formation of the contract precedes the misrepresentation, which breaches an express or implied duty arising from the contract, a tort claim for the misrepresentation is barred. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 75 (Colo. 2004). The 2002 Agreements established and defined the relationships between the parties. *Grynberg v. Agri Tech, Inc.*, 985 P.2d 59, 63 (Colo. Ct. App. 1999), *aff'd*, 10 P.3d 1267 (Colo. 2000). Mr. Cohen does not assert that the parties, in bargaining for the provision of periodic reports, failed to contemplate that the reports would be truthful. *Id*. at 62. Indeed, the omissions of which the counterclaim defendants are accused would directly have violated the express requirement that they disclose all activity in Traditional Holdings' accounts. Also, the 2002 Agreements and the Fund partnership agreement required the counterclaim defendants to act in good faith and absolved them from liability for all but gross negligence or willful misconduct.

Furthermore, the reporting obligation would be rendered meaningless if the counterclaim defendants were free in the performance of the 2002 Agreements to omit from the disclosures select information without prior authorization. The parties are entitled to rely upon these promises and the claims for fraud and negligent misrepresentation must be dismissed. *BRW*, 99 P.3d at 75.

### B.     Aiding and abetting

The claims for aiding and abetting Ms. Lynch's alleged fraud and breach of fiduciary duty

stand on the same footing. Mr. Cohen contends that the counterclaim defendants' duty not to aid and abet Ms. Lynch arises not from the contracts but rather from an independent, common law obligation to refrain from assisting Ms. Lynch in the breach of her own duties to him. However, the conduct by which the counterclaim defendants are alleged to have assisted Ms. Lynch is the same conduct predicating the misrepresentation claims; if the counterclaim defendants did not breach the contracts then they also did not aid and abet. *See Waters v. International Precious Metals Corp.*, 172 F.R.D. 479, 499 (S.D. Fla. 1996). As explained above, allowing Mr. Cohen to assert separate tort claims for the alleged contractual breaches would defeat the parties' settled assignments of duties and risks.

## VI.  Other arguments

Though I conclude that Mr. Cohen's fraud and negligent misrepresentation claims must be dismissed for the reasons stated above, for the sake of clarity I address alternative grounds that the counterclaim defendants proffer for dismissal. They contend that Mr. Cohen fails to plead fraud with sufficient particularity and that the negligent misrepresentation claim fails for lack of a third-party transaction.

### A.     Sufficiency of the fraud allegations

The counterclaim defendants assail Mr. Cohen's fraud allegations for lack of particularity. It is sufficient to note that Mr. Cohen identified particular alleged omissions from periodic communications.

The counterclaim defendants also argue that Mr. Cohen's scientor allegations defeat themselves. They point out that Mr. Cohen acknowledges in his counterclaim that Mr. Greenberg twice corresponded by letter, warning Mr. Greenberg of the impending crisis. They assert that

these efforts by Mr. Greenberg were inconsistent with – in fact, contrary to – their purported scheme to deceive Mr. Cohen as to the condition of his finances.  I agree that Mr. Cohen's account seems implausible.  However, my task under Rule 12 is not to assess the plausibility of Mr. Cohen's allegations.  Rather, I am obliged to accept all of his allegations as true, including the allegation that the counterclaim defendants divined that he would not receive the letters.

### B.     Sufficiency of the negligent misrepresentation allegations

As the Restatement makes clear, and this Court has observed, a claim for negligent misrepresentation is available in Colorado against one who, in the course of his business, profession or employment, negligently supplies false information for the guidance of others in their business transactions.  Restatement (Second) of Torts § 552 (1977); *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F. Supp. 861, 870-871 (D. Colo. 1996); *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1343 (D. Colo. 1997).  The term "business transactions" means transactions between the claimant and someone other than the defendant.  *United Int'l Holdings*, 946 F. Supp. at 871; *Stat-Tech Liquidating Trust*, 981 F. Supp. at 1343; *Grubka v. WebAccess Int'l, Inc.*, 445 F. Supp. 2d 1259, 1270 (D. Colo. 2006).

Mr. Cohen argues that revisions to the model Colorado Jury Instructions signal an abandonment of the third-party transaction requirement.  However, that amendment is insufficiently authoritative effectively to adumbrate the Colorado Supreme Court's treatment of the question.  As this Court has explained, the claim of misrepresentation is limited by the third-party requirement because for most pecuniary damages resulting out of business transactions there are adequate remedies available under the law of sales and contract.  *Colorado Nat'l Bank of Denver v. Adventura Associates, L.P.*, 757 F. Supp. 1167, 1172 (D. Colo. 1991).  This case

illustrates the point: Mr. Cohen is seeking tort damages for alleged conduct that constitutes a breach of contract. The negligent misrepresentation claim must be dismissed on this additional ground.

Accordingly, it is ORDERED that:

1) the counterclaim defendants' motion for judgment on the pleadings [#122] is GRANTED; and

2) Mr. Cohen's second (breach of fiduciary duty), third (fraud), fourth (negligent misrepresentation), fifth (professional negligence), sixth and seventh (aiding and abetting), and eighth (negligence) claims are DISMISSED.

Dated: January  23 , 2007, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
Lewis T. Babcock, Chief Judge