# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# LEWIS T. BABCOCK, JUDGE

Civil Case No. 05-cv-01233-LTB

NATURAL WEALTH REAL ESTATE, INC., a/k/a Greenberg & Associates, Inc., d/b/a Agile Advisors, Inc. a Colorado corporation;
TACTICAL ALLOCATION SERVICES, LLC, d/b/a Agile Allocation Services, LLC, a Colorado limited liability company;
AGILE GROUP, LLC, a Delaware limited liability company;
GREENBERG & ASSOCIATES SECURITIES, INC., d/b/a Agile Group, a Colorado corporation; and
NEAL R. GREENBERG, a Colorado resident,

    Plaintiffs and Counterclaim Defendants,

v.

LEONARD COHEN, a Canadian citizen residing in California;
KELLEY LYNCH, a United States citizen residing in California; and
JOHN DOE, Numbers 1-25,

    Defendants,

and,

LEONARD COHEN, a Canadian citizen residing in California,

    Counterclaim Plaintiff,

v.

TIMOTHY BARNETT, a Colorado citizen,

    Counterclaim Defendant.
_____

# ORDER
_____

    This matter is before me on Plaintiffs' Motion for Summary Judgment as to Cohen's First

Counterclaim—breach of contract—and accompanying brief [**Docket ## 148, 149**], Cohen's

response [**Docket # 180**], and Plaintiffs' reply [**Docket # 181**]. Oral arguments would not materially assist the determination of this motion. After consideration of the papers, the pleadings, and the case file, and for the reasons stated below, I GRANT Plaintiffs' motion [**Docket # 148**].

## I. BACKGROUND

The allegations of the Second Amended Complaint, stripped of considerable extraneous and salacious content, are substantially the following. In 1996, Cohen retained Plaintiff Tactical Allocation Services, LLC ("Tactical"), directed by Plaintiff Greenberg, to manage assets Cohen had earned from a long career in the music industry. A large portion of these assets came from the sale of Cohen's royalty rights. These funds—approximately $5 million—were deposited in the name of Traditional Holdings LLC ("THLLC"). THLLC eventually invested these funds into a mutual fund—entitled Agile Safety Fund ("ASF")—managed by Plaintiffs.

Defendant Lynch, Cohen's manager, oversaw and had power of attorney over all of Cohen's financial dealings. In order to provide Cohen with certain tax benefits, Lynch held a 99.5% share of THLLC, while Cohen held a 0.5% share. Over the ensuing years, the majority of Cohen's wealth was withdrawn from the THLLC investment accounts by means of shareholder "loans" to both Cohen and Lynch. Specifically, Lynch and/or Cohen would request a shareholder loan—as authorized by the THLLC member agreement—and Plaintiffs would sell off a portion of the ASF assets and use the monies to effectuate the loan.

Plaintiffs allege they sent numerous warning letters to Cohen and Lynch detailing the precarious financial condition of the accounts. Cohen claims never to have received these letters. By late 2004, Cohen's account balances had diminished from $4.7 million to under $150,000.

Cohen claims approximately $4 million of the "loan" withdrawals were made by Lynch without his knowledge or consent.

In October 2004, Cohen and Lynch allegedly parted ways and began to issue competing directives to Plaintiffs. Each blamed the other for Cohen's financial distress. Apprising as slim his chances of recovering his lost assets from Lynch, Cohen allegedly conspired to extort the money from Plaintiffs by asserting spurious claims and demanding Plaintiffs elicit a settlement from their insurance carrier or submit to private mediation. Lynch informed Plaintiffs of the scheme, which lead to Plaintiffs filing their complaint in this case. After Plaintiffs filed this lawsuit, Cohen allegedly used his fame to publish—via his website and press releases—defamatory statements charging Plaintiffs with responsibility for his financial condition.

Plaintiffs' Second Amended Complaint **[Docket # 93]**, filed on May 23, 2006, asserts ten claims for relief: defamation; commercial disparagement; interference with prospective business advantage; unjust enrichment; civil extortion; civil conspiracy; violation of the Colorado Organized Crime Control Act; injunctive relief; declaratory judgment; and interpleader—against Lynch and Cohen—to determine rightful ownership of the remaining THLLC funds.

Cohen asserted nine counterclaims in response [**Docket # 100**]. I previously dismissed counterclaims two through eight [**Docket # 144**]. The remaining counterclaims are claim one—breach of contract—and claim nine—accounting. Plaintiffs request summary judgment as to the breach of contract counterclaim.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White*

*v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for that party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

The non-moving party has the burden of showing there are specific issues of material fact to be determined. *Celotex*, *supra*, 477 U.S. at 322. A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough that the evidence be merely colorable. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is therefore appropriate only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id*. Accordingly, in this breach of contract case, Cohen must show material facts in dispute by a preponderance of the evidence in order to defeat Plaintiffs' motion for summary judgment. Cohen meets this burden if he sets forth evidence that—if believed by the ultimate factfinder—makes it

4

more likely than not Plaintiffs breached a contract as alleged in the complaint.

## III. ANALYSIS

### 1. Rule 56(f) affidavit of Jay Horowitz [**Docket # 180-49**]

Cohen's counsel filed a Rule 56(f) affidavit requesting I defer ruling on Plaintiffs' motion while Cohen conducts additional discovery. When a nonmovant files an affidavit under Rule 56(f), the party invokes the Court's discretion. *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984). Rule 56(f) allows a court to stay or deny a summary judgment motion in order to permit further discovery if the nonmovant states by affidavit that it lacks facts necessary to oppose the motion. *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). In order to be afforded relief, the nonmovant must identify the probable facts not available and what steps have been taken to obtain those facts. *Id*. The nonmovant also must explain how additional time will enable him to rebut the movant's allegations of no genuine issue of fact. *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992). If the desired discovery would not contradict the moving party's contention that there is no question of material fact, Rule 56(f) relief should not be granted. *Jones v. City and County of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988)

Generally, affidavits submitted under Rule 56(f) are entitled to liberal treatment unless they are dilatory or meritless. *Id*. In light of the fact that this case has been ongoing for nearly three years, during which time Cohen has filed numerous dilatory, prolix, and meritless motions but has not attempted—despite my prior admonitions that he do so—to acquire the discovery he supposedly lacks, I find no reason to afford Cohen that "liberal treatment" he requests. *See Paul Kadair, Inc. v. Sony Corp. of America*, 694 F.2d 1017, 1031 (5th Cir. 1983) (holding that factors

relevant in determining whether a party has been dilatory include the length of the pendency of the case prior to the Rule 56(f) request; whether and when the party could have anticipated its need for the requested discovery; the previous efforts, if any, made by the party to obtain the needed information; any prior solicitations of or provisions for discovery by the trial court; and any warning which the party might have had that—absent a speedier request—discovery might be denied and his claim be dismissed).

Rule 56(f) is not a license for a fishing expedition, especially one embarking so inexplicably late in the season. *See Lewis v. City of Ft. Collins*, 903 F.2d 752, 758–59 (10th Cir. 1990). Cohen must therefore show with particularity how additional discovery would raise a genuine issue of material fact as to his breach of contract claim. *Jones*, *supra*, 854 F.2d at 1211. This he has not done. Accordingly, I find no reason to delay the adjudication of Plaintiffs' summary judgment motion.

## 2. Motion for Summary Judgment [**Docket # 148**]

Before reaching Plaintiffs' motion for summary judgment, I find it necessary—in light of the intractable hodgepodge of theories proffered by Cohen in support of his breach of contract counterclaim—to clarify the scope of the purported contract at issue.

### a. Scope of contract at issue

Retreating from the broad allegations of his original breach of contract counterclaim, Cohen's opposition to the instant motion essentially argues the breach of only one provision of one written contract—Paragraph 10 of the Investment Advisory Agreement ("IAA") between Tactical and THLLC: "The ADVISER [Tactical] and/or the account Custodian shall provide the CLIENT with periodic investment reports showing the Assets and market values for each security

included in the Assets." Cohen contends Plaintiffs breached this contractual duty by sending Cohen monthly e-mail reports that were false and misleading.

"Cohen's principal claim is that the Agile Group's failure to accurately report the value of Cohen's assets, as required by the IAA, enabled Lynch to continue to make [unauthorized] withdrawals." [**Docket # 180, p. 25**]. As Cohen acknowledges, however, the IAA does not specify either the frequency or form of the periodic reports. Cohen argues that this alleged ambiguity was clarified by later oral agreements entered into between him and Plaintiff Greenberg. Specifically, Cohen states Greenberg orally agreed to send Cohen "monthly e-mail reports stating the value of all of his assets under Greenberg's management and informing him of any withdrawals of funds from these accounts" [**Docket # 180, p. 16**].

It is indisputable that Tactical did, in fact, send detailed monthly reports to Cohen. More specifically, these reports were sent to Cohen's attention, care of THLLC, at the address of record listed under "CLIENT" in the IAA. These monthly reports provided detailed analysis of the ASF and THLLC transactions, including noting the disputed shareholder "loans." Although Cohen claims to never have received these reports, he cannot be heard to argue that these complete and accurate reports were not sent in accordance with the terms of the IAA. Instead, Cohen must rely on the alleged oral agreements entered into between Cohen and Greenberg that Cohen claims modified the terms of the IAA to include a requirement that Greenberg—not just Tactical—send Cohen—not just THLLC—emails—not just reports—including detailed analysis of the THLLC assets.

To the extent any independent agreements between Cohen and Greenberg had the potential to modify the terms of the IAA, however, Cohen's affidavit demonstrates such

7

"agreements" predated the IAA by several months. Notably, Cohen states in his affidavit that Greenberg confirmed "[o]n or about December 18, 2001 . . . in accordance with our agreement that he would regularly report directly to me" [**Docket # 180-2, p. 8**]. But the IAA was not signed until two months later—on February 26, 2002. Moreover, Cohen's affidavit repeatedly states he had no knowledge of the IAA until June 2005. Since Cohen claims he had no knowledge of the IAA agreement, he can scarcely claim his oral agreements with Greenberg were intended to modify the IAA—the only "contract" which Cohen claims has been breached.

Even if Cohen and Greenberg had such an agreement, however, Lynch intervened to modify the agreement. By emails beginning January 8, 2002, Lynch—as authorized by a prior durable power of attorney and other documents—instructed Greenberg to reference Cohen's assets in the monthly emails "very simply and without technical language" [**Docket # 149-17, p. 2**]. While Cohen claims he reiterated his agreement with Greenberg on March 20, 2002, Lynch issued a superseding directive on September 27, 2002: "With respect to the monthly statements, could I simply have a recap (and not details) of the total amount per entity and loss/gain per entity. Not the details that are also contained in the individual statements" [**Docket # 149-23, p. 2**]. Lynch further instructed Greenberg to omit any reference to the loans in his monthly emails [**Docket # 149-17, p. 19**]. Greenberg—apparently relying on these instructions—did not itemize the "loans" in his monthly emails, but included them in the calculation of assets.

As I have previously noted in earlier orders in this case, Mr. Cohen is bound by the terms of the IAA, specifically to the extent the IAA identifies both Lynch and Cohen as "the CLIENT." *See* Order, January 23, 2007 [**Docket # 144**]. Lynch was given authority in paragraph 19 of the IAA—as well as the prior power of attorney—to instruct Tactical on Cohen's behalf, and

8

Plaintiffs were entitled to rely upon Lynch's instructions as if they came from Cohen himself unless instructed otherwise by Cohen *in writing*. [**Docket # 149-16**]. Under the same paragraph, Plaintiffs may not be charged "for any claims or damages resulting from such reliance or from any change in the status of the relationship between the clients."

Cohen likewise cannot breathe new life into his counterclaim by casting it as a breach of "good faith" under the IAA. I have previously held that "Mr. Cohen in no way expressed to the plaintiffs limitations on Ms. Lynch's authority and the plaintiffs demonstrated no negligence by relying upon the long-standing practice." *See* Order, December 21, 2005 [**Docket # 73**]. Thus, even if Cohen's alleged March 21, 2002, oral agreement with Greenberg was admissible to modify the reporting requirements of the IAA so as to require the inclusion of details of the "loans," the reporting requirements were later re-modified by Lynch on September 27, 2002, to require exclusion of those very details. Cohen fails to offer any specific facts that support his contention that Plaintiffs should have disregarded Lynch's authority or instructions in this regard.

Excluding the time before Cohen's March 20, 2002, "directive" and after Lynch's September 27, 2002, "directive," leaves a six-month period in which Plaintiffs could have breached a contract, had one existed. Accordingly, the scope of the contract that is the subject of this breach of contract action is limited to the alleged oral agreement between Greenberg and Cohen—wherein Greenberg agreed to meet the requirements of paragraph 10 of the IAA by providing Cohen with monthly emails detailing the transactions of the THLLC accounts—in effect from March 20, 2002, through September 27, 2002, the relevant time period.

### b. *Summary judgment*

As the party seeking summary judgment, Plaintiffs bear the initial responsibility of

informing the Court of the basis for their motion and identifying those portions of the record that demonstrate the absence of genuine issues of material fact. *Celotex*, *supra*, 477 U.S. at 323. In cases—such as this one—where the nonmoving party will bear the burden of proof at trial, "a summary judgment motion may be properly made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id*. at 323. The initial burden of production can be satisfied by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. *Id*. at 325. The nonmoving party then bears the burden of pointing to specific facts showing there is a genuine issue for trial. *Id*. The nonmoving party must do more that simply show some metaphysical doubt as to the material facts. *Clemmons v. Bohannon*, 956 F.2d 1523, 1525 (10th Cir. 1992).

Under the terms of the IAA, Colorado law controls the interpretation of the contract. "The elements for a breach of contract claim in Colorado are: (1) existence of a contract; (2) performance by plaintiff or some justification for nonperformance; (3) failure to perform the contract by defendant; and (4) damages to plaintiff." *Arenberg v. Cent. United Life Ins. Co.*, 18 F. Supp. 2d 1167, 1172 (D. Colo. 1998). Failure of the nonmoving party to show a material question of fact as to each of these elements entitles the moving party to summary judgment.

Assuming *arguendo*, that Cohen's oblique references to an "oral contract" with Greenberg are sufficient to raise a genuine issue of material fact that a contracted existed, and assuming as well that Cohen performed his obligations under the contract—obligations which are not made at all clear by the record—Cohen is unable to demonstrate a genuine issue of material fact exists regarding whether Greenberg failed to perform his obligations under the contract or whether Cohen was damaged by such a failure. Cohen alleges Greenberg orally agreed to send Cohen

"monthly e-mail reports stating the value of all of his assets under Greenberg's management and informing him of any withdrawals of funds from these accounts" [**Docket # 180, p. 16**]. Cohen provides no evidence, however, that Greenberg breached this agreement.

A review of the counterclaim makes clear that none of the allegedly unauthorized withdrawals occurred during the relevant time period. Instead, the counterclaim reveals that the unauthorized withdrawals did not begin until some time in 2003. *See, e.g.*, Defendant Cohen's Answer to Second Amended Complaint, Counterclaims, and Jury Demand [**Docket # 100**], at p. 35 ("The effect of the Agile Group's actions and omissions was that Cohen was never made aware of the extraordinary and highly unusual withdrawals that Lynch was taking from the THLLC account without Cohen's knowledge or permission beginning in January 2003."); and p. 30 ("Throughout 2003, Lynch withdrew funds from the accounts for her own use."). Cohen's affidavit also admits Greenberg reported several "authorized" transactions during the relevant time period [**Docket # 180-2, p. 16**]. While there may have been other "withdrawals of funds" Greenberg did not report to Cohen, it is the duty of Cohen—not the Court—to provide and point to evidence in the record supporting his position. *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513–14 (10th Cir. 1990). It is not this Court's task to comb through Cohen's submissions in an effort to link alleged facts to his arguments. *Barcikowski v. Sun Microsystems, Inc.*, 420 F. Supp. 2d 1163, 1169 (D. Colo. 2006). Cohen directs me to no evidence—other than the bare assertions in his papers—supporting his position that Greenberg failed his duties under the alleged contract in the relevant time period. These bare allegations are insufficient to overcome a motion for summary judgment. *See Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 800 (10th Cir. 1991) ("A nonmoving party cannot survive a motion for summary judgment based on bare

allegations in the pleadings without supporting evidence.").

Cohen also fails to allege any damages arising out of the alleged breach. Under Colorado law, a party to a breach of contract action "must establish that the damages he seeks are traceable to and are the direct result of the wrong sought to be redressed." *Runiks v. Peterson*, 392 P.2d 590, 590 (Colo. 1964). Cohen's damages claim is that Greenberg's failure to accurately report the value of Cohen's assets—as allegedly required by the orally-modified IAA—enabled Lynch to continue to make improper withdrawals that Cohen would have stopped had the "loans" been properly reported [**Docket # 180, p. 25**]. As Cohen provides no evidence that Lynch actually made any unauthorized withdrawals in the relevant time period, however, it is absurd to claim that Lynch's future withdrawals were the direct result of Greenberg's actions. Cohen can claim no damages due to Greenberg's failure to report unauthorized withdrawals that never occurred.

## IV. CONCLUSION

For reasons unknown and unknowable, Leonard Cohen gave a trusted agent—Kelley Lynch—complete and unlimited control over his finances. Over the course of several years, Cohen's fortune was rapidly depleted. Looking back, Cohen now tries to pin responsibility for his injury on Plaintiffs. To paraphrase Justice Holmes, however, the person reposing confidence in Lynch was not Plaintiffs, but Cohen, and he himself tells us that his confidence was unlimited. *See Empire Trust Co. v. Cahan*, 274 U.S. 473, 479 (1927). Moreover, the unauthorized transactions went on for over two years without inquiry. Plaintiffs could reasonably expect Cohen to have noticed if anything was wrong in this period. *Id*. at 479–80. "Careful people generally look over their bank accounts quite frequently." *Id*. at 480. Cohen cannot blame Plaintiffs for his own

negligence in this regard by belatedly concocting a tenuous and unsupported breach of contract theory. Accordingly, I GRANT Plaintiffs' Motion for Summary Judgment as to Cohen's First Counterclaim [**Docket # 148**].

Dated: February   21  , 2008.

BY THE COURT:

  s/Lewis T. Babcock
Lewis T. Babcock, Judge